IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| SALLY KING AND WILLIE R. KING, | : | CIVIL ACTION NO. |
| | : | 1:13-CV-0229-TWT-JSA |
| Plaintiffs, | : | |
| | : | |
| v. | : | |
| | : | |
| U.S. BANK NATIONAL | : | |
| ASSOCIATION AND U.S. BANCORP, | : | **FINAL REPORT AND** |
| | : | **RECOMMENDATION ON A** |
| Defendants. | : | **MOTION TO DISMISS** |

Plaintiffs are borrowers who have filed a three-count Complaint against their putative mortgage creditor, alleging Attempted Wrongful Foreclosure, Fraud in the Concealment and violation of the Truth In Lending Act ("TILA"). The case is before the Court on Defendants' Motion to Dismiss [2]. For the reasons stated below, the undersigned **RECOMMENDS** that Defendants' Motion [2] be **GRANTED**.

## I.    BACKGROUND

Defendants removed this action from the Superior Court of DeKalb County, Georgia on January 23, 2013 based on federal question jurisdiction. *See* Notice of Removal [1]; Civil Cover Sheet [1-5]. Plaintiffs base their claims on allegedly improper assignments of the Security Deed that accompanied the loan they used to purchase their

home. The following allegations are taken from Plaintiffs' Complaint. *See* Ex. A, Pt. 1 [1-1] at 3-10.

Plaintiffs own the real property at 3437 Glenwood Road in Decatur, Georgia. See Ex. A, Pt. 1[1-1] at 3. Plaintiffs borrowed $59,685.00 on December 23, 1988[1] from ICF Mortgages Services, Inc. ("ICF") to purchase the property. *Id.* at 4. Plaintiffs executed a security deed in connection with that loan; the Deed was assigned to MLA, Inc. the same day. *See id*.

On August 1, 1995, MLA assigned the Security Deed to MVB Mortgage Corporation ("MVB"). *See id*.; *see also id*. at 17. MVB the same day assigned the Deed to Government National Mortgage Association ("Ginnie Mae"). *See id*. Then, on September 2, 2005, MVB, despite having already assigned the Deed to Ginnie Mae, assigned it to Mortgage Electronic Registration Systems, Inc. ("MERS"). *See id*. at 5; *see also* Ex. A, Pt. 2 [1-2] at 1.

---

[1] Plaintiffs allege that the Security Deed was assigned on December 23, 1989. The exhibit on which they rely, however, lists a date of December 23, 1988. *See* Ex. A, Pt. 1 [1-1] at 15. The Eleventh Circuit has made clear that when a plaintiff attaches exhibits to a complaint and the exhibits contradict the allegations of the complaint, the exhibits control. *See Griffin Indus., Inc. v. Irvin*, 496 F.3d 1189, 1205-06 (11th Cir. 2007).

Next, Plaintiffs received correspondence dated December 9, 2010 from U.S. Bank Home Mortgage stating that Plaintiffs' payments had been sent to an incorrect address and providing Plaintiffs with a different address that listed "U.S. Bank Home Mortgage" as the proper recipient. *See* Ex. A., Pt. 1 [1-1] at 5; *see also* Ex. A, Pt. 2 [1-2] at 16.

On April 26, 2012, Plaintiffs, sent a written request to Defendants "requesting . . . proof of ownership/possession" of their promissory note and security deed. *Id.* Defendant U.S. Bank, N.A.[2] responded on June 18, 2012 with a letter stating that Ginnie Mae is the "Investor and Owner" of the promissory note and security deed, and that U.S. Bank, N.A. is the account servicer. *Id.* at 5; *see also* Ex. A, Pt. 2 [1-2] at 5-7.

On September 4, 2012, Plaintiffs received a letter from U.S. Bank, N.A. stating that their loan had been "assigned, sold or transferred" to it. *Id.*; *see also* Ex. A, Pt. 2 [1-2] at 15. The letter is entitled, "Notification of Assignment, Sale or Transfer of Ownership of Your Mortgage Loan" and states that "U.S. Bank NA" is "the new creditor and Servicer of your mortgage loan . . ." Ex. A, Pt. 2 [1-2] at 15.

---

[2] While Plaintiffs allege that both Defendants sent this communication, the exhibit on which Plaintiff relies mentions only "U.S. Bank Home Mortgage, a division of U.S. Bank, National Association." Ex. A, Pt. 2 [1-2] at 6.

3

Plaintiffs on October 3, 2012 received a letter from U.S. Bank, N.A. stating that their account was in arrears and that the Bank had initiated foreclosure proceedings. *See* Ex. A, Pt. 1 [1-1] at 5; *see also* Ex. A, Pt. 2 [1-2] at 18-19. On October 19, 2012, U.S. Bank, N.A.'s attorneys mailed Plaintiffs correspondence seeking to collect the outstanding balance on Plaintiffs' account. *See id.* at 6; *see also see also* Ex. A, Pt. 3 [1-3] at 2-3. That letter states that it is being sent on behalf of "U.S. BANK NATIONAL ASSOCIATION, the Mortgage Servicer." Ex. A, Pt. 3 [1-3] at 2 (emphasis in original).

On October 28, 2012, MERS assigned the Security Deed to U.S. Bank, National Association. *See* Ex. A, Pt. 1 [1-1] at 6; *see also* Ex. A, Pt. 2 [1-2] at 3.

On November 5, 2012, Plaintiffs "requested a payoff" for their debt. *See id.* They received a response on November 23, 2012. *See id.* On November 27, 2012, they presented payment for the outstanding amount at the offices of the U.S. Bank, N.A.'s foreclosure attorneys and requested that the attorneys surrender their promissory note and Security Deed. *See id.* The attorney to whom Plaintiffs spoke, however, did not produce either document and instead directed Plaintiffs to send their payment to a post office box address. *See id.* Then, on November 29, 2012, two days after their visit to

the attorneys' office, Plaintiffs received a letter from U.S. Bank, N.A.'s attorneys stating that a foreclosure sale was scheduled for January 2, 2013. *See id*. The letter states that U.S. Bank National Association "is the current assignee of the Security Deed." Ex. A, Pt. 3 [1-3] at 9.

On December 4, 2012, Plaintiffs sent a letter to the address that U.S. Bank, N.A.'s attorneys had provided and which enclosed a copy of their payoff check. *See* Ex. A, Pt. 1 [1-1] at 6. Plaintiffs had not received any response as of December 20, 2012. *See id*. at 7. They filed this action in the Superior Court of DeKalb County, Georgia on December 21, 2012. *See id*. at 10.

## II.    DISCUSSION

### A.    Legal Standard on a Motion to Dismiss

Plaintiff's Complaint [1-1] brings claims under both federal and Georgia state law. While Plaintiff asserts certain counts under Georgia law, this case, once removed, became "subject to federal rather than state rules of procedure." *Hollis v. Florida State Univ.*, 259 F.3d 1295, 1299 (11th Cir. 2001) (internal quotations and citation omitted); *see also* Fed. R. Civ. P. 81(c)(1). The undersigned therefore evaluates Plaintiffs' Complaint against the standards the Federal Rules of Civil Procedure provide.

Defendants move to dismiss Plaintiffs' Complaint under Fed. R. Civ. P. 12(b)(6). Rule 12(b)(6) requires dismissal of a complaint that fails to "state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A court's "analysis of a [Rule] 12(b)(6) motion is limited primarily to the face of the complaint and the attachments thereto." *Brooks v. Blue Cross and Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1368 (11th Cir. 1997). The court "must accept factual allegations as true and construe them in the light most favorable to the plaintiff." *Nelson v. Bank of Am.*, No. 1:11-CV-3890-TWT, 2012 WL 315400, at *1 (N.D. Ga. Jan. 31, 2012). But "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Moreover, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citations omitted).

B.      Attempted Wrongful Foreclosure

Plaintiffs' first claim is for Attempted Wrongful Foreclosure under Georgia law. To state a claim for this tort, a plaintiff must allege sufficient facts that state a plausible claim that the party attempting to foreclose made a "knowing and intentional publication of untrue and derogatory information concerning the debtor's financial condition," and that they incurred damages as a direct result of such publication. *See Mayrant v. Deutsche Bank Trust Co. Americas*, Civil Action No. 1:10-CV-3094-TWT, 2011 WL 1897674, at *2 (N.D. Ga. May 17, 2011) (Thrash, J.) (*quoting Aetna Finance Co. v. Culpepper*, 171 Ga. App. 315, 319 (1984)). "Derogatory" is defined as "detracting from the character or standing of something" or, alternatively, "expressive of low opinion" or "disparaging." MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY (10th ed.) 312.

Plaintiffs do not base this claim on any alleged false publication of any debt that they owed or any default for which they were supposedly responsible. Rather, Plaintiffs allege solely that Defendants committed this tort by pursuing foreclosure despite not having the right to foreclose. Specifically, the Complaint alleges that Defendants "failed to perfect a security interest in the subject property" because the underlying debt

and related Security Deed were "not properly assigned and transferred to Defendants." Ex. A, Pt. 1 [1-1] at 7. The allegedly "defective assignments of the security deed did not convert the servicer" into a lender who had the right to foreclose on Plaintiffs' property. *Id.* "Plaintiffs [also] allege that . . . any assignment of the Security Deed without proper transfer of the obligation that it secures is a legal nullity." *Id.*

This claim must be dismissed for failure to state a claim. As noted above, the tort of Attempted Wrongful Foreclosure requires Plaintiffs to show that Defendants published "untrue and derogatory information concerning the debtor's financial condition." *Mayrant*, 2011 WL 1897674, at *2. Plaintiffs make no allegations of any publication at all, much less publication of derogatory or untrue information about Plaintiffs' financial condition, and certainly not damages resulting specifically from such publication.

Plaintiffs concede that they make no express allegations about any publication, but rather argue that "[a]llegations of false publication are inherent in Plaintiff's complaint wherein . . . [the] complaint indicates that Defendants do not have a perfected security interest in Plaintiffs' property . . ." Pl. Brf. [6-1] at 6. Plaintiffs in their brief also ask the Court to consider newly-stated facts not included in Complaint, that is, that

8

a Notice of Sale was published for four weeks that stated that "Plaintiff was 'in default' and 'indebted' to [Defendant] 'U.S. Bank National Association.'" *Id*. at 5.

None of this satisfies Plaintiffs' obligation to plead facts that plausibly demonstrate that Defendants published untrue and derogatory statements about Plaintiffs' financial condition. Even if the Court were to find publication "inherent" in the Complaint, it remains that Plaintiffs' claim is premised solely on the creditor's alleged inaccurate statements about its own legal right to foreclose. Plaintiffs do not base this claim on any alleged false statements about *Plaintiffs'* financial condition. As a result, the claim fails. *See Peterson v. Merscorp Holdings, Inc.*, No. 1:12–cv–00014–JEC, 2012 WL 3961211, at \*5 (N.D. Ga. Sept.10, 2012) (plaintiffs failed to state a claim for attempted wrongful foreclosure where they alleged only that defendant misrepresented itself as the secured creditor on foreclosure notice).

Second, Plaintiffs' Attempted Wrongful Foreclosure claim appears to be a back-door attempt to do something Georgia law does not permit Plaintiffs to do, that is, challenge the validity of assignments to which they are not parties. *See Williams v. US Bank National Association*, No. 1:12-CV-3943-TWT, 2013 WL 2285748, \*3 (May 23, 2013) (debtor could not challenge MERS' prior assignment to U.S. Bank because "as

9

a stranger to the Assignment, Plaintiff lacks standing to challenge it.") (internal quotations and citation omitted); *Breus v. McGriff*, 413 S.E.2d 538, 539 (Ga. Ct. App. 1991); *see also Haldi v. Piedmont Nephrology Assocs.*, 641 S.E.2d 298, 300 (Ga. Ct. App. 2007); O.G.C.A. § 9-2-20(a) ("an action on a contract . . . shall be brought in the name of the party in whom the legal interest in the contract is vested, and against the party who made it in person or by agent.").

Plaintiffs generally cannot resist foreclosure by creating a dispute that does not exist between the assignor and assignee of the Security Deed. If there is a dispute between those parties as to the validity of the assignments – which there appears not to be here – then those parties can litigate that question. But Plaintiffs have no interest in how this hypothetical, non-existent dispute would be resolved, and cannot bring a claim for Attempted Wrongful Foreclosure on this basis.

Third, the Georgia Supreme Court has now expressly rejected much of the basis upon which Plaintiffs attempt to challenge Defendants' right to foreclose. The Complaint alleges Attempted Wrongful Foreclosure on the ground that Defendants failed to properly identify the "true identity of the secured creditor" and that any assignment to Defendants of the Security Deed was a "nullity" because it was not also

10

accompanied by assignment of the debt itself. Ex. A, Pt. 1 [1-1] at 7. These claims have been rejected as a matter of Georgia law. *See You v. JP Morgan Chase Bank*, No. S13Q0040, 2013 WL 215562, at *3 (Ga. May 20, 2013). Thus, the undersigned **RECOMMENDS** that Defendants' Motion [2] be **GRANTED** as to the First Cause of Action.

      C.     Fraud In The Concealment

Plaintiff's Second Cause of Action is for "Fraud in the Concealment." *See* Ex. A, Pt. 1 [1-1] at 7-9. Under Georgia law, "[t]he tort of fraud has five elements: (1) a false representation or omission of a material fact; (2) scienter; (3) intention to induce the party claiming fraud to act or refrain from acting; (4) justifiable reliance; and (5) damages." *Wolf v. Middleton*, 700 S.E.2d 598, 602 (Ga. Ct. App. 2010); *see also* O.G.C.A. § 51-6-2.

> In all cases of fraud involving a concealment of a material fact, scienter, or knowledge of the alleged falsehood, is an essential element of the tort . . . . In fraudulent concealment actions the allegedly defrauded party must prove that the alleged defrauder had actual, not merely constructive, knowledge of the fact concealed . . . . There must be some evidence of the silent party's actual knowledge that the defect exists at the time of the sale from which his moral guilt in concealing it can be inferred.

11

*ReMax N. Am. v. Clark*, 527 S.E.2d 138, 142 (Ga. Ct. App. 2000).

Plaintiffs allege that Defendants committed fraud by presenting themselves as the holder of the promissory note and/or Security Deed when they were not. Defendants thus "conceal[ed] the fact that another party has the authority to negotiate, modify, [and] amend the terms of the" promissory note. Ex. A, Pt. 1 [1-1] at 8. Plaintiffs allege that this concealment "had a materially negative effect on . . . Plaintiffs that is known by Defendants." *Id*. That is, "had the truth been disclosed, Plaintiffs would have attempted to negotiate, modify, or amend the terms" of their promissory note "with the rightful owner of the debt." *Id*. "Defendants," moreover, "intended to and have induced third party purchasers based on these misrepresentations . . . , causing disruptions of Plaintiff's (sic) quiet enjoyment and possession." *Id*. "Defendants' failure to disclose the true creditor and arrange for surrender of the" promissory note and Security Deed impede their ability "to properly ascertain the status of the subject property, its underlying debt and other issues of concern." *Id*. "Defendants," moreover, "are aware of the misrepresentations and continue to profit from them." *Id.* at 9. Plaintiffs do not, however, allege facts that explain how Defendants profited, or are profiting, from the alleged fraud.

12

Defendants removed this action to this Court on January 23, 2013. *See* Notice of Removal [1]. The Federal Rules of Civil Procedure "apply to a civil action after it is removed from state court." Fed. R. Civ. P. 81(c)(1); *see also Hollis v. Florida State Univ.*, 259 F.3d 1295, 1299 (11th Cir. 2001) (removed actions become subject to federal, rather than state, rules of procedure). Under those rules, a party alleging fraud "must state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). The particularity rule alerts defendants of "the precise misconduct with which they are charged and protect[s] defendants against spurious charges of immoral and fraudulent behavior." *Ziemba v. Cascade Int'l, Inc.*, 256 F.3d 1194, 1202 (11th Cir. 2001) (internal quotes omitted).

The Eleventh Circuit has held that "under Rule 9(b), the Plaintiffs must allege (1) the precise statements, documents, or misrepresentations made; (2) the time, place, and person responsible for the statement; (3) the content and manner in which these statements misled the Plaintiffs; and (4) what the defendants gained by the alleged fraud." *Brooks v. Blue Cross and Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1380-81 (11th Cir. 1997) (*citing Fitch v. Radnor Indus., Ltd.*, No. 90-2084, 1990 WL 150110, at *2 (E.D. Pa. Sept. 27, 1990)); *see also Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1291 (11th Cir. 2010). Moreover, in cases involving multiple defendants, a

13

plaintiff may not simply "lump together" all the defendants in the allegations of fraud; the complaint must instead reasonably notify each defendant of how it supposedly participated. *See Brooks*, 116 F.3d at 1381 (*citing Vicom, Inc. v. Harbridge Merchant Servs., Inc.*, 20 F.3d 771, 777-78 (7th Cir. 1994)); *see also Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2d Cir. 1993); *Midwest Grinding Co. v. Spitz*, 976 F.2d 1016, 1020 (7th Cir. 1992); *DiVittorio v. Equidyne Extractive Indus., Inc.*, 822 F.2d 1242, 1247 (2d Cir. 1987); *Balabanos v. North Am. Inv. Grp., Ltd.*, 708 F. Supp. 1488, 1493 (N.D. Ill. 1988).

Defendants argue that the Court should dismiss this Second Cause of Action because it does not fulfill the requirements of Rule 9 and because Plaintiffs fail to allege sufficient facts to state a claim for fraud under Georgia law. The undersigned agrees. *See* Def. Brf. [2-1] at 7-11.

The Complaint does not identify the precise false statements on which Plaintiffs relied and does not make any attempt to specifically identify what each individual Defendant did to commit fraud. Rather, the Complaint summarily lumps the Defendants together and generally alleges that the "Defendants" as an undifferentiated whole committed various acts of fraud. This approach fails. Also, while the Complaint

14

conclusorily states that Plaintiffs acted in "reasonable reliance" on the Defendants' statements, the Complaint does not state with any precision what specific acts Plaintiffs did or did not do in reliance on specific statements made by a particular Defendant. Finally, the Complaint is silent as to "what the defendants obtained as a consequence of the fraud." *Brooks*, 116 F.3d at 1380-81.

More substantively, the exhibits attached to the Complaint do not support the Complaint's conclusory allegations of fraudulent concealment. The gist of the claim is that Defendants claimed to possess the right to foreclose when they did not and "conceal[ed] the true owner of the underlying debt . . ." Ex. A, Pt. 1 [1-1] at 8. The Court's review of the various documents attached to the Complaint, *see* Ex. A, Pt. 2 [1-2] and Pt. 3 [1-3], do not reveal any statements tending to "conceal" the true owner of the debt. In these documents, Defendant U.S. Bank N.A. states, for example, that it is the "servicer,"[3] that the note "is in our possession or held on our behalf by our Custodian," Ex. A, Pt. 2 [1-2] at 15, and that it is the "assignee of the Security Deed," Ex. A, Pt. 3 [1-3] at 9. Plaintiffs do not allege facts that show these statements to be

---

[3] One of the letters states that U.S. Bank N.A. is "creditor and servicer." Ex. A, Pt. 2 [1-2] at 15. In this regard, the Court notes that a mortgage servicer is generally considered to fall under the definition of "creditor." *See In re Minbatiwalla*, 424 B.R. 104, 109 (Bankr. S.D.N.Y. 2010).

fraudulent and do not allege anything showing that these statements are concealing the true owner of the debt. Indeed, these letters do not appear to even identify the actual owner of the debt itself (which, in fact, is something about which Plaintiffs complain). A failure to expressly identify the true owner of the debt is not the same as fraudulently concealing or disguising the identity of that entity.

Finally, to the extent Plaintiffs attempt to show falsity on the ground that the assignments vesting the Defendants with the power to sell were invalid, that is not a viable basis for civil fraud for all of the same reasons discussed in connection with the First Cause of Action. The undersigned therefore **RECOMMENDS** that Defendants' Motion [2] be **GRANTED** as to their Second Cause of Action.

D.    TILA

Plaintiffs' Third Cause of Action is a two-paragraph claim for violation of the Truth in Lending Act, 15 U.S.C. §§ 1601, *et seq.* ("TILA"). Plaintiffs allege that Defendants "are/were subject to and must comply with" TILA by virtue of "their mortgage activities." Ex. A, Pt. 1 [1-1] at 9. Plaintiffs then allege that "Defendants failed to notify them in writing within 30 days after Defendants originally received the

16

transfer or sale of their mortgage loan on or about December 9, 2010." *Id.*; *see also* Ex. A, Pt. 2 [1-2] at 16.

TILA generally requires disclosures as to the terms of a loan at closing. The law was enacted to promote informed borrowing by requiring lenders to fully disclose to borrowers the terms of credit, *i.e.*, fees to be charged, interest rates to be applied, and other essential elements of the loan transaction. *See Nussbaum v. Mortg. Serv. Am. Co.*, 913 F. Supp. 1548, 1553 (S.D. Fla. 1995). TILA also requires, in certain circumstances, a new creditor or assignee to inform the borrower of a sale or assignment of the loan within thirty days. *See* 15 U.S.C. § 1641(g). However, a borrower must bring an action for damages based on a faulty disclosure within one year from the date that the violation occurs. *See* 15 U.S.C. § 1640(e).

The facts upon which Plaintiffs bring this Third Cause of Action are: "Plaintiffs allege Defendants failed to notify them in writing 30 days after Defendants originally received the transfer or sale of their mortgage loan on or about December 9, 2010." Ex. A, Pt. 1 [1-1] at 9. This allegation is the entire basis of this claim. Thus, Plaintiffs were required to bring the claim within one year of the alleged violation, that is, by December 9, 2011. But Plaintiffs instead filed their Complaint over a year after that, on

17

December 21, 2012. *See* Ex. A, Pt. 1 [1-1] at 9-10. The Complaint is therefore untimely and must be dismissed for that reason.

Plaintiffs argue in their brief that the violation at issue "originally occurred on December 9, 2010 and was repeated on September 4, 2012 . . . when a notice was sent indicating a recent transfer which did not purportedly occur until October 28, 2012." Def. Brf. [6-1] at 12. But the actual claim pleaded in the Complaint is premised solely on the alleged violation in 2010. Plaintiffs cannot expand the claim through legal arguments in their brief. The claim itself is premised solely on a 2010 violation, and thus the claim over two years later in 2012 is untimely.[4]

Plaintiffs argue in the alternative that they "did not know or have reason to know of the violation until it was revealed on September 4, 2012" when U.S. Bank, N.A.

_____

[4] In any event, Plaintiffs' reference in their brief to the September 4, 2012 letter as a separate TILA violation appears meritless. As noted above, the TILA provision under which Plaintiffs sue requires creditors to disclose within 30 days of having acquired assignment of a borrower's loan. Plaintiffs allege that Defendants made that exact disclosure on September 4, 2012. *See* Ex. A, Pt. 1 [1-1] at 5. In other words, according to Plaintiffs' own factual allegations, Defendants did not fail to disclose having received an assignment of Plaintiffs' loan on September 4, 2012. Plaintiffs allege the opposite, that is, that Defendants stated on that date that they had acquired the loan, but that this statement was legally untrue. This theory does not state a claim under the TILA provision for *failing to disclose* having acquired a loan.

18

notified Plaintiffs that their mortgage has been assigned, sold or transferred to that entity. *Id*. at 13. Plaintiffs thus argue that the statute of limitations should not begin to run until September 4, 2012. *See id*. at 13-14.

While the Eleventh Circuit has held that the TILA statute of limitations may be subject to equitable tolling, this doctrine is applied only in extraordinary circumstances. *See Ellis v. Gen. Motors Acceptance Corp.*, 160 F.3d 702, 708 (11th Cir. 1998) (finding tolling may apply to TILA statute of limitations); *Justice v. United States*, 6 F.3d 1474, 1479 (11th Cir. 1993) (limiting the application of tolling to exceptional circumstances). In order to establish that equitable tolling would be justified, a plaintiff is required to demonstrate that the TILA violations were the product of "deliberate concealment" which they had "no reasonable means of discovering" prior to the end of the statute of limitations period. *See Cabello v. Fernandez-Larios*, 402 F.3d 1148, 1154-55 (11th Cir. 2005). The nondisclosure of documents is insufficient to establish equitable tolling. *See In re Smith*, 737 F.2d 1549, 1552 (11th Cir. 1984); *see also Sampson v. Washington Mut. Bank*, No. 11-11400, 2011 WL 4584780 (11th Cir. Oct 05, 2011) (unpublished); *Frazile v. EMC Mortgage Corp.*, 382 F. App'x 833 (11th Cir. 2010) (unpublished).

19

Plaintiffs argue that they "did not know or have reason to know of the violation until it was revealed on September 4, 2012 by an apparent attempt to compensate for the original failure to send notice in 2009." Pl. Brf. [6-1] at 13. Here, the Complaint makes no reference whatsoever to any TILA-related events that occurred in 2009. *See* Def. Reply [7] at 13. More to the point, the Complaint does not establish any deliberate concealment or other exceptional facts to justify equitable tolling. To the contrary, the Complaint alleges that "Plaintiffs had been receiving notices from U.S. Bank regarding his (sic) mortgage since December 9, 2010." Ex. A, Pt. 1 [1-1] at 5. Indeed, the Complaint attaches a letter from U.S. Bank to Plaintiffs on December 9, 2010 stating that the mortgage loan was with "U.S. Bank Home Mortgage" and that Plaintiffs should mail their payments to that entity at a particular address. Ex. A, Pt. 2 [1-2] at 16. While this letter does not specifically state that U.S. Bank had received assignment of the loan, these facts hardly support a claim that U.S. Bank was deliberately concealing that it had acquired some interest in that loan. Thus, there is no basis to excuse Plaintiffs' untimely filing of their TILA claim. The undersigned therefore **RECOMMENDS** that Defendants' Motion [2] be **GRANTED** as to the Third Cause of Action.

## III.    RECOMMENDATION

For the reasons stated above, the undersigned **RECOMMENDS** that Defendants' Motion [2] be **GRANTED** and that Plaintiffs' Complaint be **DISMISSED** for failure to state any claims upon which relief can be granted.

As this is a Final Report and Recommendation, the Clerk is **DIRECTED** to terminate the reference of this matter to the undersigned.

**IT IS SO RECOMMENDED** this 29th day of July, 2013.

_____
JUSTIN S. ANAND
UNITED STATES MAGISTRATE JUDGE